Good morning, Your Honors, and may it please the Court, Doug Keller, on behalf of Mr. Morales. This case turns entirely on whether the intent portion of the Utah statute Mr. Morales was previously convicted under sets out alternative elements and is therefore amenable to the modified categorical approach. And that's a question of state law that's resolved by Utah case law. Utah case law establishes that Utah juries need not unanimously agree on which intent the defendant had as long as they all agree he had one of the intents listed in the statute. That means the statute sets out a single, indivisible intent. And what's your controlling case from Utah? The best case I have, Your Honor, is the Baer case. And that's the case, the Utah case, in which the jury was instructed on the full scope of the intent portion of the statute. State v. Baer, 275 P. 3rd, 1050? Yes, Your Honor. And in that case, the court had to look at the Utah jury instructions and determine whether the jury necessarily found each fact necessary for a conviction under the statute at issue in this case. And there, even though the jury was instructed on the entirety of the intent element, the court found that the jury hadn't necessarily found sufficient facts to convict the defendant. So, I mean, clearly the sexual abuse part of it has a different element than the other. But is, I guess, is your best argument that these are alternate means to abuse a child? They're alternative intents to fulfill the statute. So, I think, yes. Well, I mean, I think we have the, you know, we've got cases that are Almanzo or Reynos. You know, we've got, whether it's the elements of the fence or multiple means of achieving the same element, sort of that type of language. Yes, exactly, Your Honor. But if these are just alternate ways to abuse a child, then that seems to me your better argument. But it is, they are different elements. If it weren't for those Rendon and that particular, that Almanzo case, to me they look pretty, like they have different elements. And then Bear, I think, is your best case. Is it Bear? Yes. That's what I thought, Your Honor. I think that is your best case. I agree, but I also think that Rendon establishes that simply because a series of things are differentiated by an or, that that's not enough to establish their alternative elements. So, but if we were to find, and I'm not saying that we are, just that's a hypothetical, does your client then lose after that? Do you have no more arguments over that? Do you win or lose on the divisible part of it? Yes, that's the case. I think we both agree that it all turns on that narrow issue. And so I think my best argument for that is the Bear case and the other cases involving jury instructions. But even setting aside Utah case law, I think that is such a better policy argument and a better policy reading of the statute. Under the government's reading of the statute, it's incredibly difficult, or at least it's needlessly difficult, to convict someone of molesting children in Utah. For example, if you have a defendant… Do you think we should send this to the Utah Supreme Court? You certainly could, Your Honor. I wouldn't have any objection to that. But I also think the Utah Supreme Court would tell you that they are… This is about lawyers not answering questions. Do you think we should? I know we could. No, I don't. I don't think so because my client has a relatively soon release date. And I think that this court can resolve it based on Utah case law, but also on the fact that… So you're arguing the delay would be… Prejudicial to my client because he'd potentially be serving needless time. That's a good answer. When is the scheduled release date? I believe it's August. But I also wouldn't oppose this court sending it to the Utah Supreme Court. That's certainly a good reason not to. So setting aside Utah case law, I think under the government's reading of the statute, if you had a defendant who unquestionably touched a child in an inappropriate place, but six jurors thought that the defendant did it for a sexual purpose, and six jurors thought, well, no, I disagree with that. I actually think he did it to humiliate the child. Under the government's reading of the statute, that defendant couldn't be convicted because the government couldn't establish beyond a reasonable doubt the intent element. I can't imagine the Utah legislature would have intended that result. I think that simply underscores the fact that these are alternative factual means of fulfilling one unified intent element. Okay. Thank you. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. May it please the Court, Ann Perry from the United States Attorney's Office for the Southern District of California. Can I ask you, when you saw it, what did you actually charge him? What was he actually charged with, not by you, but in the state court? A violation of Title VIII United States Code, Section 1326. By doing what? I'm sorry? By doing what? Oh, by either unlawful reentry or being present in the United States. No, no, I'm not talking about the federal conviction. I'm sorry.  That's actually a really interesting question, Your Honor. And the reason why I say that is because he was originally charged with, I think it was attempted rape of a child, and then the charges that bring us before this court actually result from a plea agreement to a lesser charge. And what was the charge? What makes that particularly interesting isn't the way a lot of cases happen. People get charged with something bigger and they plead to something smaller. That is correct, Your Honor. That doesn't really make an unusual case in the Southern District, does it? It doesn't in the Southern District, Your Honor, but it makes it an interesting case in the fact that I think that if he is- It makes him seem like a worse person. I don't know about that either. But it doesn't really help us on the divisible. We've still got to deal with what? Because it's a collateral attack on that prior, right? That is correct. Well, what was the information? I assume he pled to an information if there was a plea bargain. What did the information charge him with? I have it right here, Your Honor. The information charged him with attempted sexual abuse of a child, a third-degree felony. Isn't that accepted? I believe it was. Where? It's certainly part of our pleadings in the underlying case, Your Honor. So did it charge him with both doing the touching for both sexual and non-sexual reasons? What it says, when intent causes substantial emotional or bodily pain to any person or with the intent to arouse or ratify the sexual desire of any person, regardless of the sex of any participant. So whoever wrote this charged both of the intent means? Disjunctive. Yes. And what would a jury, if the case had gone to trial, how would the jury have been charged? The way— I mean, he could have been—unless the jury had to be charged that they have to unanimously agree on one or the other, you don't know what they would have been charged with, what he would have been convicted of. It would have been a general verdict of guilty, and he might have just been convicted of the non-sexual intent. Respectfully, Your Honor, this is where, while the appellant relies on the Bear case, the United States looks at a couple of— and unfortunately they are, in fact, intermediate appellate cases from Utah, but the Escamilla case and Suarez, and particularly in Escamilla, which is 198P2997, there was a defendant who was convicted of two counts of aggravated sexual abuse of a child, and the issue that was raised was that it was double jeopardy. The court there found that the defendant had engaged in two separate acts of abuse, requiring proof of different elements, so they constituted separate offenses. Although they were charged separately, so they charged— I don't have any doubt that they constituted separate offenses if they were charged separately. Understood. But in this case, it's possible to charge them not separately. The case was followed, Your Honor, by Suarez, which is State v. Suarez, 736P21040. There's very little law in this particular statute, but in any event— What would make sense to you, if you were a Utah judge, and you had a document like you have here, what would make sense to charge the jury? To me, it would make sense to charge the jury that the defendant must be found guilty of the following acts, or one of the following acts must have been committed. But with respect to the intent, since there are two intents alleged. Suarez doesn't help you at all. That was a separate acts case. Yeah. True. Yes. And— So how does that counterbear? Because the statute itself specifically says, with the intent to do this, or with the intent to do that. In other words, the— Oh, I know what the statute says, but you say you've got other cases, and you cite Suarez. But Suarez is not a case involving different states of mind. It's different acts. I mean, there's breasts and vagina, right? That's correct. Two places. I mean, somebody could presumably be charged twice for two incidents of touching the breasts, right? Yes. I don't know how any of that helps you. A statute could be divisible as to acts, or you could have separate charges as to acts, you know, touching the breasts, and then touching another part of the body, all with the same intent, right? The statute is divisible as to acts. It's been held that on several occasions. How does that help you in distinguishing or countering there? Do you have any cases that show that it's not divisible as to state of mind? I'm sorry, that it is divisible as to state of mind? No. So what we have is an intermediate court of appeal decision from the state court saying, you don't dispute that Bayer says what it says, right? It says what it says. And obviously it says what it says. It says what opposing counsel cites it for, that the statute is, in fact, not divisible as to state of mind. It stands for that proposition. You don't dispute that. I don't dispute that, but I think that the thrust of the Bayer case was the fact that the statute had changed character during the time alleged in the indictment. Let's just talk about Bayer in just a minute. And if you want to talk about Bayer, that's a good thing to talk about. But you don't have any cases from the state court that counter Bayer on that point. I don't. So Bayer is the whole ball of wax. So you can talk to me. You can talk to us and tell us why we shouldn't, why it's not controlling. But it is. So all these other cases that you raise don't really help you, right? It's sort of a dead end. Respectfully no, Your Honor. Well, the statute can be divisible as to act and not divisible as to state of mind. Do you agree to that? It doesn't make sense, but I think it's possible. Why does it make sense to say, look, if you touch the breasts with an evil state of mind, it's different than if you touch a vagina with an evil state of mind. And the evil state of mind might not be divisible. It might be either to have sexual gratification or to harm. But it's the same state of mind, but acts are different. Is there something nonsensical about that? That is not nonsensical, Your Honor. Okay, so let's talk about Bayer. What makes Bayer not controlling, essentially? I mean, why shouldn't we just accept Bayer's authoritative state law? Bayer specifically dealt with the fact that in that case, and it touches a little bit on what Your Honors have just raised, it dealt with the fact that the jury did not specify in its verdict which acts the defendant had committed, and the court said that the general verdict of guilty could not stand if the state's case was premised on more than one factual or legal theory of the elements of the crime without the specific rulings by the jury. So if I were judge, as this court has suggested, there would be specific rulings to be made by the jury as to which acts and which intent would be found. Well, they have different elements. They do. I mean, one is sexual in nature, and the other is physically or emotionally abusive in nature. Yes, Your Honor. So you could be guilty of one and not guilty of the other. Sure. I mean, they're not all included. That's right. And the elements are separate, but the statute does have. But I guess that was what I was asking. Is it really just what are the ways we can abuse children, and so does that make it just one statute, or is it really essentially they somehow, or they put one's a sexual abuse and the other is emotional or physical abuse? I mean, a lot of states have them completely separate. They wouldn't be all in one. Yes, Your Honor. Well, one of the cases that was mentioned in this, I think the louder case, and that one talked about the statute requiring touching of specific body parts with intent to cause substantial pain, but it said that that statute does prohibit non-sexual assault directed to sexual parts of the child's body. So in answering Your Honor's question, there are different ways of violating this particular law. In other words, an attack on a sexual part of the child's body or a sexual attack. Well, if you had beaten the kid and not doing it for your own sexual gratification, you could still be touching the same part of the body, but if you were touching that part of the body for your sexual gratification, it's another crime. I mean, it's all under the same umbrella. That's what makes it tricky here. Well, believe me, I know it's tricky. And it's unfortunate that this matter wasn't before the district court because we did do a lot of litigation, but that was all on the issue of attempt. We never touched any of these issues before the district court. But he reached them. Not specifically. He did say that the statute was divisible. Aside from the attempt, he threw in a line that essentially addressed this issue. He's a thoughtful judge. And you don't discuss our decision in Rendon in your brief decision that's relied on by the defendant. In that case, the statute said every person who enters any vehicle when the doors are locked with the intent to commit grand or petty larceny or any felony is guilty of a burglary. And we said that under California law, the jury did not need to be unanimous. As to any particular count, they can enter a general verdict and that the statute was indivisible. I know. I'm familiar with the decision. I know, but you don't discuss it in your brief. They rely on it, and it seems to me to be right on point here. It's the same. Obviously, it's a different crime, but the holding seems to me to be directly relevant here. The simple distinction in this particular statute, the way the United States views this, and again, this was a difficult case dealing with a difficult statute to interpret with not a whole lot of law. But the particular statute does list intent twice, which in Rendon it doesn't. It says the intent to do a whole lot of things, as opposed to it may be a meaningless distinction to the court today, but as it is a distinction in the structure of the statute itself. Okay. Thank you. Thanks very much. Could I ask you one quick question in terms of the certification? I understand that he has only, what, two months left? He only has two months left to go before he wins his release date? I think it's in August. But he wins something more. What else does he win if he wins his case besides setting aside the conviction? Does he have any—he would have the right to remain here? He wouldn't have the right to remain here. They would have to send him back through removal proceedings. They couldn't rely on the prior removal order, so he might have some sort of relief available to him, but he'd have to go through removal proceedings again. I presume he has other relatives in this country. He does. They could bring him— He's essentially raised in this country. And they could bring him—I forget what the number of the statute is. They can—this family unification procedure. That's right, Your Honor. He'd have to pursue that in the new removal proceedings. So it means something to him other than another couple of months in jail. I don't mean to be flippant about it. If you don't have to serve it, it doesn't sound like much. Right. No, that's absolutely right, Your Honor. Just two brief points, Your Honors. First, to the extent that this court thinks this is a difficult question on Utah law and that the government's right that there's nothing directly on point, which I disagree with, but if they're right, we still win because the BIA has made clear that when the issue is removability, the government bears the burden to prove a statute's divisible. So to the extent the court thinks it is to throw its hands up on the meaning of Utah law here, the tiebreaker goes to us. And if the court has no further questions, I have nothing else. Thank you. Thank you. The case is now given stands for minutes.
judges: Korman, Kozinski, Callahan